UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPETITIVE TECHNOLOGIES, ET AL., | No. C-02-1673 JCS |
| Plaintiff(s), | **ORDER RE COSTS MOTIONS [Docket Nos. 683, 684 & 703]** |
| v. | |
| FUJITSU LIMITED, ET AL., | |
| Defendant(s). | |

## I.     INTRODUCTION

On September 20, 2004, the Court entered judgment in favor of Fujitsu on all of the University's claims against it. Fujitsu then filed a bill of costs as the prevailing party, seeking $498,996.31 in costs. The Clerk awarded $224,146.50. Fujitsu now brings a Motion for Review of Clerk's Taxation of Costs ("Fujitsu Motion") asking that costs be awarded in the amount of $484,648.56.[1] The University, in turn, brings a Motion to Review the Clerk's Taxation of Costs ("University Motion"), arguing that Fujitsu should be awarded only $76,874.89 in costs.[2] The University also asserts in its Motion that any costs awarded Fujitsu should be split between the University and former Defendant Competitive Technologies, Inc. ("CTI"). Finally, CTI joins in the University Motion to the extent the University argues that Fujitsu's cost award should be reduced. CTI opposes the University Motion, however, to the extent the University seeks to impose some of

---

[1] This amount is the figure in Fujitsu's Reply brief on the Fujitsu Motion and reflects various reductions in requested costs to which Fujitsu stipulated prior to bringing the Motion and during the course of briefing.

[2] This amount is the figure in the University's Reply brief on the University Motion.

Fujitsu's costs on CTI. *See* Competitive Technologies, Inc.'s Joinder in Part of the University's Motion to Review the Clerk's Taxation of Costs ("CTI Joinder").

The Court concludes that the Motions and the Joinder are appropriate for decision without oral argument. For the reasons stated below, the Court awards Fujitsu $232,606.96 in costs against the University only.[3]

## II.  ANALYSIS

### A.  Allocation of Costs Between the University and CTI

As a preliminary matter, the Court addresses the University's assertion that any costs awarded in this case should be apportioned between the University and CTI. CTI was originally the lead plaintiff in this action, pursuant to a November 26, 1985 "Servicing Agreement" under which CTI was the University's licensing agent for enforcing various patents, including those at issue in this case. However, on July 23, 2002, the University and CTI amended the "Servicing Agreement." Pursuant to the "Amendment to Servicing Agreement," CTI withdrew from this action, making the University the only plaintiff in the case. On November 19, 2002, the Court dismissed CTI as a plaintiff without prejudice. *See* Order Dismissing Without Prejudice Patent Infringement Claims of Plaintiff Competitive Technologies and Fujitsu's Counterclaims One Through Five Against Competitive Technologies ("Dismissal Order") at 7 (Docket No. 242).

The University asserts that it would be appropriate for the Court to order that any costs awarded be split evenly between CTI and the University in light of CTI's "leading role" in the litigation. In the alternative, it argues that costs awarded up to the date of CTI's withdrawal, July 23, 2002, should be awarded against CTI while subsequent costs be awarded against the University. CTI counters that because it is not a party to the final judgment, it should bear none of the costs of this action. Further, CTI argues that any petition for allocation of costs should be deferred until after the Court has determined which costs are to be taxed, which will provide a basis for allocating costs

---

[3] The University argued in its Motion that the Court should defer ruling on the motions pending the decision of the Federal Circuit on appeal. The Court agreed to a brief delay, moving the scheduled May 19, 2006 hearing to August 25, 2006. In the interim, the Federal Circuit issued its decision.

if the Court finds that allocation is appropriate. The Court concludes that it does not have the authority to tax costs against CTI because no judgment has been entered against it.[4]

Rule 54(d)(1) states that "costs other than attorney's fees shall be allowed as of course to the prevailing party . . . ." Fed R. Civ. P. 54(d)(1). "That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty." *Kentucky v. Graham*, 473 U.S. 159, 168 (1985). Further, "the logical place to look for recovery of fees is to the losing party-- the party legally responsible for relief on the merits." *Id*. at 164. Thus, when a former plaintiff is no longer a party to the relevant litigation at the time of final judgment, "the court is without authority to tax costs against him." *Strong v. Broward Cty. Kennel Club*, 77 F. Supp. 262, 264 (S.D. Fla. 1948); *see also Heeren v. City of Jamestown*, 817 F. Supp. 1374, 1377 (W.D. Ky. 1992) (holding that a plaintiff was not entitled to an award of attorneys' fees under the Equal Access to Justice Act against the federal government because the plaintiff did not prevail against a government agency in an underlying action). As the only plaintiff against whom judgment was entered, the University is the "legally responsible" party in this case. *Kentucky*, 473 U.S. at 164. Accordingly, all costs are awarded against the University.

**B. Disputed Costs**

**1. Legal Standard**

Federal Rule of Civil Procedure 54(d)(1) states that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Taxable costs are listed in 28 U.S.C. § 1920 as follows:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

---

[4] Alternatively, to the extent that the Cour has the inherent or other authority to award some or all of the costs of this matter against CTI, it declines to do so. CTI was not a significant participant in this matter, and the University requested that CTI be dropped as a party.

3

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

While Rule 54(d) gives courts discretionary authority to refuse to tax costs that are allowable under § 1920, courts may not award costs that are not enumerated in § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). The Ninth Circuit has held that *Crawford Fitting* does not require that a particular category of costs be specifically mentioned in § 1920 to be allowable. *Alflex Corp. v. Underwriter's Lab., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990) (rejecting the approach taken in *Vicao Aerea Sao Paolo v. Int'l Lease Fin. Corp.*, 119 F.R.D. 435 (C.D. Cal. 1988), in which court held that costs of "subpoena serving fees" were not allowable because they were not specifically mentioned in § 1920). Rather, courts are free to interpret the meaning of the phrases used in § 1920 to determine what costs are allowable. *Id*.

Rule 54(d)(1) "creates a presumption in favor of awarding costs to the prevailing party which may only be overcome by pointing to some impropriety on the part of the prevailing party that would justify a denial of costs." *Russian River Watershed Protection Committee v. City of Santa Rosa*, 142 F.3d 1136, 1144 (9th Cir. 1998). According to Civil Local Rule 54-1(a), a bill of costs "must state separately and specifically each item of taxable costs claimed." Civ. L. R. 54-1(a). Further, a party seeking costs must provide an affidavit stating that the costs were "necessarily incurred, and are allowable by law" and "[a]ppropriate documentation to support each item claimed." *Id*. With regard to individual itemized costs, "the burden is on the party seeking costs . . . to establish the amount of compensable costs and expenses to which it is entitled." *Allison v. Bank One - Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002).

### 2. Fees of the Clerk

Fujitsu seeks $740.00 for "Fees of the Clerk." All of the costs sought in this category are for *pro hac vice* fees, that is, fees to admit attorneys to practice in this Court. Fujitsu asserts that such costs are expressly authorized under 28 U.S.C. § 1920(1), which allows for taxation of "fees of the clerk." The University asserts that no *pro hac vice* fees should be awarded, citing to Civil Local

4

Rule 54-3(a), which allows for the award only of the clerk's filing fee and fees for service of process. For the reasons stated below, the Court denies Fujitsu's request for *pro hac vice* fees.

There is a split of authority over whether *pro hac vice* fees may be recovered as taxable costs. *See Abrams v. Van Kampen Funds, Inc.*, 2006 U.S. Dist. LEXIS 6778 at *14-15 (N.D. Ill. Feb. 21, 2006) (holding that *pro hac vice* fees are not recoverable as costs because "[i]t is the attorney's choice as to where to seek admission and where to practice . . . A client should not be charged for the cost of the attorney being admitted to practice."); *Montgomery County v. Microvite Corp.*, 2004 U.S. Dist. LEXIS 8611 at *11-12 (E.D. Pa. May 13, 2004) (holding that *pro hac vice* fees are an expense of counsel that is not normally charged to a fee-paying client and therefore not recoverable as costs under § 1920); *Schmitz-Werke GMBH + Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734, 745 (D. Md. 2003) (holding that *pro hac vice* fees are an expense of counsel, not the client, and therefore are not recoverable); *Covert v. U.S.*, 2003 U.S. Dist. LEXIS 25098 at *2 (E.D. Tex. Oct. 23, 2003) (holding that *pro hac vice* fees are an expense of counsel such as a licensing fee or Bar dues, and therefore are not recoverable); *Romero v. U.S.*, 865 F. Supp. 585, 594 (E.D. Mo. 1994) (holding that *pro hac vice* fees are not recoverable as costs because they are an expense of counsel). *But see U.S. ex. rel. Gear v. Emergency Med. Assocs.*, 436 F.3d 726, 730 (7th Cir. 2006) (affirming, without discussion, the award of *pro hac vice* fees as a cost); *Beck v. Prupis*, 162 F.3d 1090, 1100 (11th Cir. 1998) (affirming, without discussion, the award of *pro hac vice* fees as a cost); *Aerotech Res., Inc., v. Dodson Aviation, Inc.*, 2005 U.S. Dist. LEXIS 34517 at *12 (D. Kan. Dec. 19, 2005)(allowing, without discussion, *pro hac vice* fees to be recovered as costs); *Southside River Rail Terminal, Inc. v. CSX Transp., Inc.*, 2005 U.S. Dist. LEXIS 13419 at *6-7 (S.D. Ohio July 5, 2005) (allowing *pro hac vice* fees to be recovered as costs under the "fees of the Clerk" heading of § 1920).

Although the Ninth Circuit has not addressed this issue, a number of district courts in the Ninth Circuit have not allowed such fees to be recovered. *See Arndt v. Mokai Mfg.*, 2006 U.S. Dist. LEXIS 36189 at *1 (D. Or. June 2, 2006) (holding that *pro hac vice* fees are not recoverable as costs); *Symantec Corp. v. CD Metro, Inc.*, 2005 U.S. Dist. LEXIS 39432 at *13-14 (D. Or. Aug. 12, 2005) (declining to award *pro hac vice* fees as costs because the losing party voluntarily chose to

5

hire out-of-state counsel). This Court finds persuasive the reasoning of the courts that have declined to award *pro hac vice* fees, namely, that such fees are an expense of counsel that is not normally passed on to clients, and therefore, it should not be included in a cost award. *MEMC Electronic Materials v. Mitsubishi Materials*, cited by Fujitsu, does not support a contrary result, 2004 U.S. Dist. LEXIS 29359 at *3 (N.D. Cal. Oct. 22, 2004). In that case, the Clerk awarded *pro hac vice fees* but the defendant later withdrew its request for those fees. 2004 U.S. Dist. LEXIS 29359 at * 4. As a result, the court did not reach whether such costs were allowable.

Fujistu's request for $740 in *pro hac vice* fees is denied.

### 3. Fees for Service of Summons and Subpoena

Fujitsu seeks $2,107.50 in costs for service of process fees. The University asserts that Fujitsu is entitled to only $588.00 in service of process fees because the remaining fees sought, in the amount of $1,519.50, were incurred in the proceeding before the International Trade Commission ("ITC") and not in this case. The Court agrees.

In support of its request for service of process fees in the ITC proceeding, Fujitsu cites two Court orders, entered on the basis of the parties' stipulations, dated May 21, 2002 and August 22, 2002. According to Fujitsu, these orders reflect an agreement between the parties that the costs incurred in the ITC proceeding would be considered as costs in this proceeding and on that basis, these costs should be allowable. On May 21, 2002, the Court filed a Stipulated Order that "all discovery taken in the aforementioned ITC proceeding is deemed for all purposes to have been served on all parties to this case in the District Court for the Northern District of California." *See* Stipulated Order Deeming Discovery Taken During the Proceedings Before the International Trade Commission to Have Been Served on All Parties in the District Court for the Northern District of California ("The May 21 Order") at 1 (Docket No. 20). The May 21 Order does not discuss or address the costs associated with discovery.

In an order filed on August 22, 2002, the parties stipulated that: 1) "[a]ll of the documents requests or responses to document requests served in the ITC investigation are deemed to have been served in this action;" 2) "all documents that were produced in the ITC investigation . . . are deemed to have been produced in this action;" 3) "[i]nterrogatories that were served or answered in the ITC

6

investigation are deemed to have been served or answered in this action;" 4) "any requests for admissions that were propounded in the ITC investigation and responded to are deemed to have been propounded or responded to in this action;" and 5) "[a]ll of the depositions that were taken and expert reports provided in the ITC investigation . . . are deemed to have been propounded or responded to in this action." *See* Order Regarding Discovery ("the August 22 Order") (Docket No. 74). The August 22 Order also does not mention costs.

To the extent an award of costs may be allowable under some circumstances on the basis of agreement between the parties, there is no agreement here that would allow for such an award. Specifically, the two Orders cited by Fujitsu contain no express, or even implied, agreement to include the costs incurred in the ITC as costs in this action. Therefore, the Court declines to award ITC costs on the basis of the May 21 and August 22 Orders. Further, even if the parties had expressly agreed to include the costs of the ITC proceeding as costs in this action, it is unclear whether the court would have the authority to award such costs. Congress has set forth specific procedures and deadlines for obtaining an award of costs in an administrative agency proceeding such as an ITC proceeding:

> A party seeking an award of fees and other expenses shall, within thirty days of a final disposition in the adversary adjudication, submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award under this section, and the amount sought . . . .

5 U.S.C. § 504(a)(2). The Court finds no authority suggesting it has the power to circumvent this procedure.

The $1,519.50 in service of process costs incurred in the ITC proceeding are, therefore, excluded. The $588.00 in fees for service of process incurred in this action, which were not challenged by the University, are awarded in full.

### 4. Fees of the Court Reporter

Fujitsu requested in its Bill of Costs $59,983.04 for "[f]ees of the court reporter for all or any part of the transcript necessarily obtained for use in the case." This amount includes two categories of costs: reporters' transcripts of hearings, for which Fujitsu sought $2,693.60, and deposition transcripts, for which Fujitsu sought $57,289.44. These categories are addressed separately below.

### a. Reporters' Transcripts of Hearings

In its Bill of Costs, Fujitsu claimed $2,693.60 for reporters' transcripts of four hearings. Later, Fujitsu withdrew its request for the transcript of a preliminary hearing regarding claim construction that was invoiced on April 7, 2003 ($266.00). The University objects to taxation of each of the remaining three transcripts: the April 29-30, 2003 Markman Hearing ($2,200.00), the September 10, 2003 Infringement Disclosures Hearing ($138.60), and the April 2, 2004 Summary Judgment Hearing ($89.00).

Civil Local Rule 54-3 states that "[t]he cost of transcripts necessarily obtained for an appeal is allowable." Civ. L. R. 54-3(b)(1). Rule 54-3 also allows transcripts of statements made by a Judge from the bench. Civ. L. R. 54-3(b)(2). Otherwise, the cost of transcripts "is normally not allowable unless, before it is incurred, it is approved by a Judge or stipulated to be recoverable by counsel." Civ. L. R. 54-3(b)(3). None of the three disputed transcripts were approved in advance as taxable costs by the Court or stipulated to be recoverable by counsel. The only way the cost of these transcripts would be allowable, then, is if they were "necessarily obtained for an appeal" under Rule 54-3(b)(1).

Fujitsu argues that all three disputed transcripts were necessarily obtained for an appeal because they were "designated as available for citation on appeal" by the parties. Fujitsu Opposition at 8; Coyne Opposition Decl. at 1. The University asserts that none of the transcripts were necessarily obtained for an appeal and that designation as available for citation on appeal does not satisfy this requirement.

The Court is persuaded that the transcripts of the April 29-30, 2003 Markman Hearing and the April 2, 2004 Summary Judgment Hearing were "necessarily obtained for use in the appeal" because at both hearings, major issues related to the disposition of Plaintiff's claims were raised and addressed. In addition, these transcripts are allowable on the basis that they are of paramount importance in the case. *See MEMC Elec. Materials*, 2004 U.S. Dist. LEXIS 29359 at *8-9 ("Although the costs of hearing transcripts are 'not normally allowable' without the prior approval of a Judge or the stipulation of counsel, the local rule leaves room for an exercise of discretion under unusual circumstances" when the transcript is "of paramount importance in the case"); *see also* 28

8

U.S.C. § 1920 (allowing costs for any part of the stenographic transcript that is "necessarily obtained for use in the case"). Therefore, the Court awards Fujitsu's cost for these hearing transcripts. Civ. L. R. 54-3(b)(1).

On the other hand, the Court does not consider the September 10, 2003 Infringement Disclosures Hearing transcript as one that was "necessarily obtained for an appeal" under Local Rule 54-3(b)(1). Nor does the Court consider this hearing transcript to have been of paramount importance in the case.

Accordingly, the Court awards $2,289.00 for reporters' transcripts of hearings.

### b. Deposition Transcripts and Video Tapes

In its Bill of Costs, Fujitsu claimed $57,289.44 as taxable costs for all deposition transcripts and video recordings taken in the case. Of this amount, $18,798.98 was incurred during the ITC proceeding. For the reasons stated above, the Court declines to award costs incurred in the ITC proceeding. After subtracting the $18,798.98 incurred in the ITC, $38,490.46 remains in costs claimed by Fujitsu for deposition transcripts and video tapes. The costs sought by Fujitsu for videotaping are not disputed. With respect to the deposition transcripts, the parties dispute whether Fujitsu is entitled to certain expediting fees.

The University objects to $1,460.42 in expedited service costs for three items: 1) "Original & copy of transcript for Nate Scarpelli on 6/19/01" (Item 41, $795.95 claimed, $653.55 as adjusted by the University); 2) "Original & copy transcripts of Umran Inan on 2/17/03" (Item 50, $2,630.52 claimed, $1,781.70 as adjusted by the University); and 3) "Original & copy transcripts of Aris Silzars on 2/20/03" (Item 51, $1,378.60 claimed, $909.40 as adjusted by the University). University Motion, Exhibit A at 8-9. The first item (Item 41) is no longer at issue, however, because Fujitsu stipulated to forego the cost of expedited service for the Nate Scarpelli transcript ($142.40). Coyne Opposition Decl., Ex. A (November 15, 2004 email from J. Olivia to D. Goldman). As for the other two items in dispute, the Court considers both instances "specifically justified" due to the time pressures that were involved in preparing Fujitsu's March 10, 2003 Responsive Claim Construction Brief and Fujitsu's March 10, 2003 Motion for Summary Judgment (Docket Nos. 343 & 344). Therefore, Fujitsu is awarded its full costs as to these two items.

9

After the deduction of the ITC costs in this category and the expedited fee for the Scarpelli deposition transcript, Fujitsu is awarded $38,348.06 for deposition transcripts and video tapes.

### 5. Fees for Witnesses

Fujitsu claims $76.50 in costs for witness expenses under 28 U.S.C. § 1920(3) and Local Rule 54-3(e). The University does not object to these costs, which are awarded in full.

### 6. Fees for Exemplifications and Copies

In its Bill of Costs, Fujitsu sought $395,935.53 for "exemplification of copies of papers necessarily obtained for use in the case." The University contends that this amount stretches 28 U.S.C. § 1920 far beyond its permissible limits. The Court addresses each of the University's objections to this category's costs in turn.

#### a. Copies Made in ITC Proceeding

For the reasons discussed above, the Court declines to award costs incurred in the ITC proceeding. This results in a reduction in the amount of $135,731.54 from Fujitsu's claimed costs in this category, leaving $260,203.99 in claimed costs.

#### b. Copies for Convenience of Attorneys

The University objects to a number of cost items incurred in this action that appear to be for multiple copies of documents to be distributed to "team members," arguing that copies of documents made for the convenience of attorneys are not allowable. In particular, the University objects on this basis to items 172, 173-176, 178, 183, 193-194, 212, 218, 237-238, 250-251, 254, 256-260, and 272-275. These items account for $30,143.71 of the costs sought by Fujitsu in its Bill of Costs. Fujitsu has withdrawn its request for Items 172 ($1,610.49) and Item 193 ($1,447.69).

Civil Local Rule 54-3(d) states that "the cost of reproducing disclosure or formal discovery documents when used for any purpose in the case is allowable." Rule 54-3(d), however, operates within the bounds of § 1920, which states that copies of papers "necessarily obtained for use in the case" are taxable as costs. 28 U.S.C. § 1920. Courts have held that "extra copies of filed papers, correspondence, and copies of cases" are not "necessarily obtained for use in the case" but rather, are for the convenience of attorneys and thus are not allowable. *See, e.g., Lee v. Walters*, 2002 U.S. Dist. LEXIS 25536, at *3 (D. Or. Dec. 23, 2002) (holding that where prevailing party sought costs

10

for copying documents from collateral lawsuits and administrative proceedings, these costs were not allowable because they were not for discovery documents); *Fressell v. AT & T Techs., Inc.,* 103 F.R.D. 111, 116 (N.D. Ga. 1984) (holding that prevailing party would be permitted to recover charges "attributable to discovery" but would not be allowed costs for "extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys"); *see also Fogelman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991 ) (holding that the losing party "should be taxed for the cost of reproducing relevant documents and exhibits for use in the case, but should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines" and remanding to district court for determination of whether reproductions were necessarily obtained for use in the case).

This case was, admittedly, extremely complex. It involved multiple Defendants and numerous attorneys. Thus, it is conceivable that under some circumstances, extra copies of discovery documents might be allowable. Here, however, the invoices do not provide sufficient detail to show that the multiple copies that were made for team members were necessarily obtained for use in the case rather than for the convenience of counsel. Accordingly, these costs are denied. This results in a further reduction in claimed costs in this category, in the amount of $30,143.71, leaving $230,060.28 in claimed costs.

### c. Copies of Documents in Defendant's Possession

The University objects to items 266 and 268 on the basis that these costs were for copying documents that were already in Fujitsu's possession and which were not produced to the University or the court. These items account for $3,268.15 in reproduction costs. These items were for exemplifications of discovery used to prepare for the summary judgment hearing. The Court finds that they were "necessarily obtained for use in the case" and therefore awards these costs.

### d. Item 205

The University objects to item 205, an invoice dated 4/23/03 labeled "copying production page from the Fujitsu Limited production for Tokyo office" for $262.40. Because the Court is unable to determine from the invoice whether this is an allowable cost, it is denied. Fujitsu's

11

claimed costs in this category are, therefore, reduced by $262.40, leaving $229,797.88 in claimed costs.

### e. Conversion of VHS Tapes

The University objects to item 214, for $3,059.70, on the basis that it is for conversion of a VHS tape to a DVD-ROM. The Court concludes that this conversion was for the convenience of counsel and therefore denies this cost. *See Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 1990 U.S. Dis. LEXIS 18673 at *7 (D.Or. 1990). Fujitsu's claimed costs in this category are, therefore, reduced by $3,059.70, leaving $226,738.18 in claimed costs.

### f. Bates Stamping

The University argues that the cost of Bates stamping documents is not recoverable, citing *Romero v. City of Panama*. 883 F.2d 1418, 1428 (9th Cir. 1989), overruled in part on other grounds by *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1991). *Romero* held that fees are taxable "only for the physical preparation or duplication of documents, and not the intellectual effort involved in their production." *Id*. In *Romero*, the court declined to award costs for "expert research expenses incurred in assembling and preparing the content of . . . exhibits." 883 F.2d at 1427. The cost of Bates stamping was not at issue in *Romero*. Expert research is not the same as Bates stamping, which the Court determines is an aspect of the physical preparation or duplication of documents. Therefore, these costs are allowable for copies made in this action and are awarded in full.

### g. Demonstratives

Fujitsu seeks $137,657.09 in costs for demonstratives that were used at the Markman hearing and Tutorial and the summary judgment hearing. The University asserts that this amount is excessive and, further, that these costs may not be recovered because the demonstratives were not used at trial, pursuant to Local Rule 54-3(d)(5),[5] and Fujitsu did not obtained prior approval from the Court before incurring these expenses. The Court disagrees.

---

[5] Local Rule 54-3(d)(5) allows the cost of visual aids if they are "reasonably necessary to assist the jury or the Court in understanding the issues at the trial."

12

1  In *Affymetrix, Inc. v. Multilyte Ltd.*, the court held that "[n]otwithstanding the fact that there
2  was no trial, the costs of preparing visual aids for the technology tutorial and the *Markman* hearing
3  are recoverable if they were reasonably necessary to assist the Court in understanding the issues."
4  2005 U.S. Dist. LEXIS 41177 at *11 (N.D. Cal. Aug. 26, 2005).  The reasoning of *Affymetrix* is
5  relevant and persuasive:

> Here, the complicated subject-matter of the patents-in-suit made it reasonably necessary for the parties to prepare visual aids to help educate the Court.  If the action had proceeded to trial, the jury would have needed similar assistance . . . .  That said, the method of exemplification must itself be reasonably necessary to the presentation.

10 *Id.*; s*ee also Glenayre Elecs., Inc. v. Jackson*, 2003 U.S. Dist. LEXIS 14046 at *15-16 (N.D. Ill.
11 Aug. 8, 2003) (allowing cost of a computer animation, apparently prepared for Markman hearing, on
12 basis that "case was technical and complicated").

13  As in *Affymetrix*, the complicated nature of the technology at issue justifies the costs Fujitsu
14 seeks for demonstratives.  2005 U.S. Dist. LEXIS 41177 at *11.  The Court-requested tutorial (Item
15 213, $78,803.33) proved extremely helpful to the Court.  Given the potential financial impact of this
16 lawsuit, the cost of the demonstratives was reasonable in light of their usefulness.  Fujitsu has
17 withdrawn its claim for Item 181 for $4,654.00.  The cost of the other demonstratives (Items 189,
18 192, 206, 213, 225, 231, 233, 249, 270, 276) are allowed.   Therefore, Fujitsu is awarded
19 $133,003.09 for demonstratives.  The remaining claimed amount is reduced by $4,654.00 to reflect
20 the withdrawal of Fujitsu's request for item 181, leaving $222,084.18 in claimed costs.

### h. Item 277

22  In Item 277, Fujitsu seeks $46,101.40.  The invoice lists three items: 1) print-out of 235,952
23 pages of electronic data; 2) Blowbacks from Images – Color – 8.5" x 11" and 3) CD duplication.
24 The University challenges the first two items.  In particular, as to the first item, the University
25 asserts that although the CD-ROM was produced in response to a Fujitsu subpoena, the electronic
26 documents were not so much "formal discovery documents" (as Fujitsu characterizes them) as raw
27 data and that it was unnecessary and wasteful to print out.  As to the second item, the University
28 asserts that the color images listed on the disputed invoice may not have even come from the CD-

ROMs and are not taxable. Fujitsu counters that the costs of printing both the data and the images are allowable under 54-3(d)(2), which states that "[t]he cost of reproducing disclosure or formal discovery documents when used for any purpose in the case is allowable."

With respect to the cost of printing out the 235,952 pages of electronic data, the Court concludes that this expenses is not justifiable. Although under some circumstances a single hard copy print-out of discovery documents produced in electronic form might be allowable, under the circumstances here, such a massive print-out was not reasonable. Having evaluated the sample pages printed from the CD-ROM information, the Court rejects Fujitsu's contention that it was necessary to print out all of these pages. It is counterintuitive to suggest that the material would be easier to review when it is printed out on nearly 469 reams of paper than it would be to review on a computer in its electronic format. Rather, the Court finds that this information could be more easily manipulated and reviewed on a computer in CD-ROM format than as a printout.[6]

On the other hand, the color images are allowable. First, the Court is not persuaded that the images were not on the same CD-ROM as the data pages discussed above. The University has submitted a declaration by Reynaldo Barcelo, an attorney for the University, stating only that *"[t]o the best of my recollection*, the data files do not contain any color information." Barcelo Reply Decl. at 3 (emphasis added). However, the invoice specifically describes the images as "blowbacks" – a term that is used for paper printouts from electronic formats such as CD-ROMs. Fujitsu Bill of Costs, Ex. D, Invoice No. PA-00515. The only other item listed on the invoice is "CDs Duplicated,"

---

[6] In fact, the law in this area includes several cases in which costs are sought for converting paper documents to electronic format because of the many advantages of the latter: "Authority is split over whether a party automatically is entitled to both hard copy and electronic versions of computer files. Electronic records may, however, contain data that the hard copy does not." *Medtronic Sofamor Danek, Inc. v. Gary Michelson, M.D.*, 2003 U.S. Dist. LEXIS 8587 at *17 (W.D. Tenn. May 13, 2003). The split of authority that *Medtronic* refers to is whether a party that has a hard copy in hand may *also* obtain the information in electronic format. *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 933 (9th Cir. 1982) (denying electronic format in discovery to a party that had paper copies in spite of the more difficult, expensive, and time-consuming process of using the paper copies); *McNally Tunneling Corp. v. City of Evanston, Ill.*, 2001 U.S. Dist. LEXIS 20394 at *13-16 (N.D. Ill. Dec. 10, 2001) (granting in part a motion to compel the exchange of electronic documents where 100 boxes of documents sent may have been misfiled, incomplete, or overly cumbersome).

1  also related to the CD-ROMs.[7] *Id*. Therefore, the Court finds that the color images were on the CD-
2  ROM produced by the University to Fujitsu. Second, the color images, unlike the pages of
3  electronic data, serve a demonstrative purpose as discovery documents under Rule 54-3(d)(2) that
4  persuades the Court that the copies were "necessarily obtained for use in the case." 28 U.S.C. §
5  1920. The Court therefore awards $2,728.05 in costs for the color images and the duplication of the
6  CD-ROMs. The Court reaches this total by adding the cost of reproducing the color images
7  ($2,053.75) to the cost of duplicating the CD-ROMs ($600.00), subtracting the 5% discount
8  reflected on the invoice, and adding sales tax at the percentage reflected on the invoice. The Court
9  declines to award $43,373.35 of Item 277. With this reduction, the total costs awarded Fujitsu for
10 exemplifications and copies of papers necessarily obtained for use in the case is $178,710.83.

### 7. Fees for Interpreters and Translations

12 Fujitsu seeks $40,153.74 in costs for interpreters and translations. For the reasons stated
13 above, the Court does not award the costs for interpreters and translations that were incurred in the
14 ITC proceeding. These costs account for $26,600.26. The remaining issue is whether Fujitsu is
15 entitled to the costs it seeks for translation of documents. With the exception of two invoices that
16 provide insufficient detail, the Court concludes that Fujitsu is entitled to these costs.

17 Under 28 U.S.C. § 1920(6), "compensation of interpreters, and salaries, fees, expenses, and
18 costs of special interpretation services under section 1828 of this title" are taxable as costs. Courts
19 are split, however, as to whether this section allows for recovery of costs for translation of
20 documents. *See, e.g., Viacao Aerea Sao Paulo, S.A. v. Int'l Lease Fin. Corp.*, 119 F.R.D. 435, 440
21 (C.D. Cal. 1988) (holding that because § 1920(6) does not expressly state that translation fees are
22 allowable, cost of translation of documents could not be awarded, even though local rule allowed
23 award of translation fees); *Shimek v. Michael Weinig AG*, 2003 WL 328038 (D. Minn. Feb. 10 2003)
24 (citing to *Viacao* in support of its holding that translation costs were not allowable because § 1920
25 does not refer to translation costs). *But see BDT Prods., Inc. v. Lexmark Int'l, Inc.,* 405 F.3d 415,
26 419) (6th Cir. 2005) (holding that the meaning of the word "interpret" in § 1920(6) includes

---

[7] The University does not specifically object to the cost of the CD duplication. This cost will be allowed.

15

translation); *Quy v. Air America, Inc.*, 667 F.2d 1059, 1065 (D.C. Cir. 1981) (awarding translation costs under § 1920(6); *Arboireau v. Adidas Salomon AG*, 2002 WL 31466564 at *6 (D. Or. June 14, 2002) (holding, without discussion, that fees for document translation are recoverable under § 1920(6) as "compensation of interpreters" as long as sufficient information is provided).

The Court finds persuasive the line of authority that allows award of translation costs based on § 1920(6). As the Ninth Circuit noted in *Alflex Corp. v. Underwriters Labs., Inc.*, even if courts cannot award costs that are not authorized under § 1920, they are permitted to interpret the meaning of the phrases used in § 1920. 914 F.2d 175, 178 (9th Cir. 1990). The most reasonable interpretation of § 1920(6) is one which includes translation fees. Thus, the Court concludes that translation costs are permissible so long as they were necessarily incurred. The Court finds that all of the translation costs sought by Fujitsu were necessary except Items 285 and 289. The invoices for Item 285 ($895.16) and Item 289 ($63.75) do not include sufficient information to allow the Court to determine whether they were necessary to the case. Therefore, the Court awards $12,594.57 for the costs of interpreters and translation sought by Fujitsu.[8]

**IV. CONCLUSION**

For the reasons stated above, the University is taxed costs in the amount of $232,606.96.

IT IS SO ORDERED.

Dated: August 23, 2006

JOSEPH C. SPERO
United States Magistrate Judge

---

[8] The Court does not reach the University's objections to some check interpreter costs because these costs were incurred in the ITC proceeding and therefore, have been excluded on that basis.

16